**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-60953-CIV-SMITH**

CHRISTIAN PIEDRA,

Plaintiff,

v.

FANEUIL ENTERTAINMENT, INC., *et al.*,

Defendants.
_______________________________________/

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on the Plaintiff's Motion for Partial[1] Summary Judgment [DE 54], Defendants' Response in Opposition [DE 58], and Plaintiff's Reply [DE 60]. Plaintiff's Amended Complaint [DE 33] alleges claims for failing to pay Plaintiff minimum wage, in violation of the Florida Constitution and the Fair Labor Standards Act ("FLSA"), and for violating the FLSA by requiring Plaintiff to pay a portion of his tips to Defendants. Plaintiff seeks summary judgment on all of his claims. For the reasons that follow, the motion is denied.

## I. MATERIAL FACTS[2]

Defendant Faneuil Entertainment, Inc. ("FEI") operates Cheetah's Gentlemen's Club located in Pompano Beach, Florida ("Cheetah Pompano"). Defendant The Set Enterprises ("The Set") operates Cheetah's Gentlemen's Club located in Hallandale Beach, Florida ("Cheetah Hallandale"). Both FEI and The Set (jointly, the "Clubs") had annual gross revenue in excess of $500,000 during the relevant time period.

---

[1] While the motion is titled "Motion for Partial Summary Judgment," it appears that Plaintiff seeks full summary judgment.

[2] The Court omits citations to the record when a fact is undisputed.

Plaintiff worked as a disc-jockey ("DJ") at Cheetah Pompano from May 2019 through November 13, 2024. Plaintiff worked as a DJ at Cheetah Hallandale from August 2019 to October 2022. Defendants classified Plaintiff as an independent contractor, rather than an employee. Plaintiff was not paid an hourly wage or a salary for his work as a DJ. Instead, Plaintiff's income was entirely derived from tips from the entertainers who performed at the two Clubs and from tips from customers. The entertainers were supposed to tip Plaintiff a minimum of ten percent that they received in tips. Plaintiff averaged $800 per night that he worked for Defendants. At the end of every shift Plaintiff worked, he was required to surrender ten percent of his tips to the Clubs' managers. In October or November 2024, that percentage was raised to twenty percent of his tips. The amount surrendered to the managers averaged $100 per shift. According to the Clubs this was a charge for lighting, speaker usage, and music licensing. (Resps. to Request for Admission [DE 55-1, 55-2] at ¶ 11; Rodriguez Dep. [DE 55-3] 59:14-19.) At the end of each shift, Plaintiff was required to submit a report to the Clubs' managers detailing all the gratuities he received from the entertainers each shift.

Defendants did not hire DJs for any set period of time and the contract Defendants required DJs to sign does not engage DJs on a per job basis. DJs for Defendants could pick their shifts, if available, and were permitted to market themselves. Plaintiff regularly worked the night shift on Wednesdays, Thursdays, Fridays, and Saturdays at Cheetah Pompano. (Rodriguez Dep. 36:20-37:6.) If Plaintiff required a day off from a scheduled shift or could not work his entire shift, he was required to get another DJ to cover his shift. (*Id.* 38:18-39:1; 39:19-40:14.) DJs were supposed to mainly play top 40 music and not play a lot of hip hop or Spanish music, like salsa. (*Id.* 28:3-24.) The only music that the DJs were not supposed to play at all was violent music. (*Id.* 66:24-67:7.) DJs would get informal feedback about their performances from the Club managers, such as "you're doing well" or "you're not doing the right thing." (*Id.* 32:11-19.) Plaintiff did not

work as a DJ for any other employer during the time he worked at the Clubs. Plaintiff did not have any employees.

Plaintiff brought a laptop, music and microphone to the Clubs to perform as a DJ. Defendants owned, insured, and maintained all other equipment required for DJs to perform, including speakers, lights, a DJ booth, and wiring. Defendants also purchased two music licenses for use in the Clubs. DJs control their own stage set and lighting. Defendants have not purchased or used any electronic replacement to DJs, such as a standalone DJ system or a DJ controller. According to Plaintiff, it takes a lot of skill to be a DJ. (Piedra Dep. [DE 59-1] 44:2-5.)

Defendants did not consult with an attorney, the Department of Labor, or a labor consultant to determine whether their payroll practices were in compliance with the FLSA. Plaintiff resigned from The Set in October 2022 and was terminated by FEI in November 2024. According to Rick Rodriguez, the clubs' corporate representative, Plaintiff was terminated by FEI for asking the entertainers for more money, not following rules and procedures, and being rude to the entertainers. (Rodriguez Dep. 26:18-27:20.) One of the rules Plaintiff did not follow, was not dating people who work in the Clubs. (*Id.* 27:9-16.) According to Rodriguez, another issue with Plaintiff was that he would take money from customers to play music that would deviate from his playlist. (*Id.* 27:21-28:9.)

Plaintiff's Amended Complaint alleges six counts: (1) violation of Article X, Section 24 of the Florida Constitution against FEI for failure to pay minimum wage; (2) violation of 29 U.S.C. § 206 against FEI for failure to pay minimum wage; (3) violation of 29 U.S.C. § 206 against The Set for failure to pay minimum wage; (4) violation of 29 C.F.R. § 531.35 against FEI for requiring Plaintiff to pay part of his tips to management; (5) violation of 29 C.F.R. § 531.35 against The Set for requiring Plaintiff to pay part of his tips to management; and (6) violation of the FLSA and Florida Minimum Wage Act against Jose R. Rodriguez, individually.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

The Clubs do not dispute that they are covered entities under the FLSA. Thus, the Court will not address this issue. All three Defendants, however, dispute that Plaintiff was an "employee" covered by the FLSA. Defendants assert that Plaintiff was an independent contractor.

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). The labels the parties have put on the relationship are not controlling. *Id.* Courts use various factors to inquire into the "economic reality" between the parties. *Id.* Many courts consider, and the parties rely on, the following factors to determine the economic reality between the parties:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). "[T]he overarching focus of the inquiry is economic dependence." *Id.* "A determination of employment status under the FLSA . . . is a question of law." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). Weighing these factors, as explained below, Plaintiff was an independent contractor.

***1. Control of the Work Performed***

The first factor— the nature and degree of the alleged employer's control as to the manner in which the work is to be performed—considers whether an individual exerts such control over a meaningful part of the business that he stands as a separate economic entity. *Scantland*, 721 F.3d at 1313. A purported employer exercises control when it assigns specific tasks, assigns specific workers, or takes an overly active role in the oversight of the work. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1178 (11th Cir. 2012) (citation omitted). "A purported employer takes an

overly active role in the oversight of work 'when it decides such things as (1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained." *Id.* (quoting *Martinez–Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209–10 (11th Cir. 2003)).

Here, Plaintiff argues that Defendants exercised a large degree of control over Plaintiff and the other DJs: DJs had a set schedule and a set time to begin and end work; if a DJ could not work all or part of a scheduled shift, the DJ was responsible for finding coverage; Defendants retained some control over the type of music DJs played, limiting or excluding certain genres of music; managers at the Clubs gave DJs informal performance reviews; DJs have no authority to hire or fire anyone else in the Clubs; and DJs had to follow a code of conduct. Plaintiff argues that these things weigh in favor of finding that Defendants maintained a large degree of control over Plaintiff and other DJs.

Defendants, on the other hand, argue that they exercised only minimal guidance over Plaintiff's work: DJs could pick the days they wanted work; DJs could start anytime they wanted and did not have to arrive or leave at a certain time; DJs could work as many or as few shifts as they wanted; DJs could play any music they wanted as long as it was not "violent"; DJs controlled their own lighting; DJs could hire anyone to support them in their job duties; and DJs controlled their paylists. Defendants assert that DJs were not subject to performance reviews, just verbal feedback such as "you're doing well" or "you're not doing the right thing."

Considering the factors set out in *Layton*, the control factor weighs in favor of employee status. Plaintiff was permitted to hire additional people to help him perform his DJ responsibilities. However, Defendants had control over Plaintiff's work schedule. While Defendants maintain that Plaintiff could work, or not work, whenever he wanted, that is not entirely accurate based on the

record evidence. Plaintiff could only work if a shift was available. While Plaintiff could choose not to take a shift, once a shift was assigned to Plaintiff, he had to work that entire shift or find coverage for it. Defendants could terminate Plaintiff at will. While Plaintiff had control over his playlist, he had to follow Defendants' restrictions on the types of music he could play. Plaintiff also had to follow Defendants' policies, including no dating others who worked at the Clubs. Defendants largely dictated the terms of compensation, including how much the dancers had to tip Plaintiff and how much Plaintiff had to pay Defendants at the end of a shift. Thus, this factor weighs in favor of employee status. *See Watts v. Club Madonna, Inc.*, No. 1:17-cv-24666-UU, 2018 U.S. Dist. LEXIS 202258, at *7 (S.D. Fla. June 25, 2018) (finding that the control factor weighed "strongly in favor of employee status" where the DJ had to work specific shifts which he could not change unless he switched with another DJ, the DJ could be terminated at will, the DJ was obligated to follow rules of conduct, and the club determined minimum amount the dancers had to tip).

### *2. Opportunity for Profit or Loss*

Plaintiff maintains that the next factor—opportunity for profit or loss depending upon his managerial skill—also weighs in favor of employee status. Plaintiff asserts that his opportunity for profit or loss was entirely outside his control because his income stemmed entirely from the percentage of tips he received from the entertainers minus what he owed to Defendants. Defendants counter that Plaintiff had control over his opportunity for profit or loss because Plaintiff had control over the music, he was able to advertise himself, he could play what the performers preferred in an attempt to receive a higher percentage from them, and he could hire helpers to support his performance.

While Plaintiff had the ability to market himself and could play music that the performers preferred, there is no evidence in the record that indicate that either of these things would actually

change Plaintiff's compensation. While Defendants contend that catering to the desires of the entertainers would lead to higher tips from the entertainers, there is no record evidence indicating that the entertainers ever give DJs more than the required ten percent. In fact, Plaintiff testified that he believed that the entertainers often gave him less than the required ten percent. While there is some evidence that Plaintiff would occasionally get tips from customers for playing their requests, there is also evidence that Plaintiff could only play limited amounts of certain genres, thus limiting his ability to increase his income this way. Consequently, this factor weighs slightly in favor of employee status.

***3. Investment in Equipment or Materials***

Plaintiff asserts that the next factor—the alleged employee's investment in equipment or materials required for his task—weighs in favor of employee status because his investment in equipment and materials was significantly less than Defendants' investment in equipment. Plaintiff was required to have a laptop, music, and a microphone. Defendants provided the venue, speakers, lights, DJ booth, all wiring, and the music licenses. Defendants argue that they only contributed minimally to the equipment necessary for Plaintiff's work. While the work could not have been done without Plaintiff's laptop and music, it also could not have been done without the speakers, wiring, and the music licenses. Thus, this factor is in equipoise and does not weigh in favor of employee or independent contractor.

***4. Special Skill***

Plaintiff argues that the fourth factor—whether the service rendered requires a special skill—also weighs in favor of employee status. This factor considers whether a purported employee is dependent on the purported employer to equip the employee with the skills necessary to do the job. *Hughes v. Fam. Life Care, Inc.*, 117 F. Supp. 3d 1365, 1372 (N.D. Fla. 2015) (citing *Scantland*, 721 F.3d at 1318).

In support of summary judgment, Plaintiff points to the fact that Defendants treated the DJs as interchangeable and to Defendants' suggestion that DJs could be replaced by a standalone DJ system or DJ controller. Defendants rely on Plaintiff's own testimony that it takes a lot of skill to be a DJ and the fact that Defendants did not train their DJs, instead expecting them to come with the necessary skills. Here, there is no evidence that Defendants provided Plaintiff, or other DJs, with any training in the necessary skill set. Plaintiff's own testimony undermines any arguments that DJing does not involve a special skill set. Thus, this factor weighs in favor of independent contractor.

***5. Degree of Permanency and Duration of Relationship***

The fifth factor—the degree of permanency and duration of the working relationship—weighs in favor of employee status when the tenure is long and exclusive. *Watts*, 2018 U.S. Dist. LEXIS 202258, at *8-9 (citing *Scantland*, 721 F3d at 1318-19). Plaintiff argues that he had a significant degree of permanence with Defendants, as he worked for over five years for Cheetah Pompano and for over three years for Cheetah Hallandale. Additionally, Plaintiff did not provide DJ services to anyone else. While Plaintiff worked for an extended period for Defendants, he was an at-will employee, who was not hired for any set duration and was terminable with twenty-four-hour notice. Plaintiff was also free to work for other companies as a DJ. Further, while there is evidence that Plaintiff did not DJ for anyone else, there is no evidence indicating that this was Plaintiff's only job. Thus, this factor weighs slightly in favor of independent contractor because Plaintiff was terminable at will and was not prevented from working as a DJ for others.

***6. Integral Part of Employer's Business***

Plaintiff argues that the final factor— the extent to which the service rendered is an integral part of the alleged employer's business—weighs in favor of employee status. According to Plaintiff, all of the entertainers' performances are done in connection with the music being played

and DJs are required to announce entertainers to the stage, making DJs integral to the business. Defendants argue that the Clubs could operate without music or could use music from computers; therefore, DJs are not integral.

Under similar circumstances, the *Watts* court found that DJs were not integral to the club's business. *Watts*, 2018 U.S. Dist. LEXIS 202258, at *9. In *Watts*, the district court found that while "music was certainly integral to the dancers and the dancers to the club, the DJs' job could have been performed by an automated playlist" and, therefore, this factor weighed against employee status. *Id.* However, in *Watts* the DJ did not control the music played, which was set by the club, and there was no evidence that the DJ announced the entertainers. Here, the testimony is that the services provided by the DJs, including Plaintiff, were choosing the music and announcing the dancers. While the Court agrees that music is integral to the Clubs, the Court finds that the DJs' services—choosing the music and announcing the dancers—were not integral to the Clubs' business. Consequently, this factor weighs in favor of independent contractor.

***7. Weighing the Factors***

Weighing the factors, the first and second factors weigh in favor of employee status. The third factor does not weigh in favor of either employee or independent contractor status. The fourth, fifth, and sixth factors weigh in favor of independent contractor status. Thus, under the economic reality test, Plaintiff was an independent contractor of Defendants. Accordingly, Plaintiff is not covered by the FLSA and Florida wage laws.

Accordingly, it is

**ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment [DE 54] is **DENIED.**

2. Because Plaintiff is an independent contractor, Plaintiff's claims are **DISMISSED**

3. This case is **CLOSED.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 19th day of December, 2025.

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record